Oral argument not to exceed 15 minutes per side Mr. Rudder for the Plaintiff Appellant. Thank you. Now I know where to look. May it please the Court, I'd like to reserve five minutes for rebuttal. My name is Attorney Bobby Rudder. I represent American Land Investment. American Land Investment is a limited liability company owned by an individual named Dwayne Liett. For all intents and purposes, he's kind of a solo guy. It's not some big conglomerate. So throughout these arguments, I think you'll hear Dwayne's name just for context. That's who it is. This is an insurance coverage case. We're here today because the lower court granted Allstate's motion for summary judgment, concluding that as a matter of law, Mr. Liett made a series three of material misrepresentations, which permitted Allstate to deny his insurance claim. There's a little bit of quirkiness to the facts of this insurance claim. I do this a lot. I know Mr. Manahan. We've worked together in the past. So for context, Mr. Liett owns, through American Land Investments, a number of housing units, residential. But this case focused on a large commercial building that he owned. And he submitted a claim to Allstate for vandalism. And the act of vandalism was one which, frankly, is a little bit strange. It was he owned a large warehouse that was supported by a series of beams built a long time ago. And those beams were cut into using some sort of saw. The way that this was discovered is a tenant, a person that you may have heard in the briefs, Mary Lehman, called the police because she heard some noise late night. Police come. Mr. Liett comes to the site and sees this vandalism and says, OK, this is vandalism. I'm going to report it to my insurance company. When that happened, Allstate undertook an investigation. And during the investigation, they conducted an examination under oath, a process that's not unlike a deposition, except the rules are a little bit different. That examination under oath lasted a long time, I think divided into two-day sessions. And at that examination under oath, Mr. Liett answered lots and lots of questions. At the end of the investigation, Allstate denied the claim, citing the material misrepresentation clause, which is in nearly every insurance policy. And we filed a lawsuit. We did some further discovery. And the below court, when faced with the briefs, said that as a matter of law, Mr. Liett made three material misrepresentations. And it's important to focus on what a material misrepresentation is. Can I ask you a question? I'm sorry. So we have your brief, and we have the three. You lay them out pretty clearly in your brief. And it seems to me on the first one, and just correct me if I'm wrong, in your brief, you focus on the knowledge. In the second and third, you focus on materiality. Is that fair? First, maybe knowledge and materiality. But the second and third, it seems to me, you don't focus on his intent as much as the materiality. In fact, I don't think you focus on the intent at all. I think that's, on a macro level, is true. Well, I just read the words in a brief. So can you tell me, if you did, where I missed you developing the argument on intent versus materiality on the second two? On the layman one, there's no question. You say, didn't know, didn't know she was living there. Yes, well, moving to the claims history, which is a broad topic. Mr. Liette testifies at his examination under oath that these buildings had several claims prior to this claim. And all state has concluded that somehow he lied or misrepresented this claim history. Now, whether what he says in his EUO that they've had claims, I don't think that is a misrepresentation. Had he said these buildings had no insurance claims, that is a misrepresentation because he knew they did. That's my point. You're not saying he didn't know. You're saying he knew and either didn't misrepresent or it wasn't material. Yeah, I think maybe I misunderstood your point. And that's correct. So and I think it would apply to the to the third also. And really the third misrepresentation. The below court seems to seems to kind of take the inferential stuff that Mr. Liette had something to do with this vandalism. You know, this wasn't excluded for an intentional act. There's really no evidence that Mr. Liette had anything to do with this. On the third one now? Yeah, on the third point, I think that. That's the condition of the properties? Yes, yes. And that ties in a little bit, frankly, to the second one because it's talking about claims. The property is pretty material. The pre-existing condition of the property? Yeah, I would agree that is material. As to misrepresent the condition of the property? No, no, I don't. I don't think in reading his. I'm saying that he did not. I apologize. I'm saying that he did not misrepresent the condition of that property during the claims investigation stage. One background. You only have to have one of those, right? Yes. Go ahead. Yeah. Who only has to have one? In order to deny the claim, I would concede. In denying the claim, if any one of these was a material misrepresentation, it's grounds to deny the claim. So if we reject your argument with respect to any one of the three, then you lose. Okay, thank you. That's a good question. That's what I thought, but I want to make sure. Yeah. To touch on point one briefly, I glossed over it, but with the Mary Lehman, it's her status as living at the property or not living at the property. Mr. Lietz's testimony is he didn't know she was living there. Now, there's been other evidence presented that maybe. Is your position if someone says, I don't know, we can never grant summary judgment under these circumstances? No. Okay, so give me a scenario where we could. I don't know that she's living there. Didn't know she was living there. I'm sorry. If Mr. Lietz says, which he pretty much did, say, I did not realize she was living there. Can we ever grant summary judgment under your theory? Yes, I mean, I still think you could, to be frank. I think it would depend on, you know, just overwhelming factual evidence and that relating back to it being material. The specific identity of Mary Lehman. My example in my brief is if Mr. Lietz had said Mary Lehman is not a tenant or lied or tried to hide her identity because she's a potential witness, we would never be here. I would never argue that that is not a material misrepresentation. It is. But what about, I don't know if she's living there and there's a lot of evidence that he knew. There's a couple people who testified they told him. There's the husband died there. All these things happened. It seems pretty overwhelming. I think you're talking about a long period of time, you know, several years that she's a tenant. He had told her she wasn't permitted to live there. The lease says she's not permitted to live there. The way the property is set up is her unit is around back, not something he's going to go see every single day. Her apartment? Her unit, whatever, the leased premises. Okay. And was there an apartment? I saw a reference in the briefs to an apartment. I think what basically happened was the leased premises, you know, she kind of had a bed set up in a makeshift apartment. It's not a traditional residential apartment. I mean, this is a commercial building. Storefront, warehouse, it doesn't look anything like an apartment complex. It wasn't made or designed or zoned for that. That's why in the lease that he has with Mary Lane, he says it's not something to be used for. Do you see that it's material, though, if it is shown or not? No. Okay. Well, it seems to me you have a fairly good argument that it's not material with respect to that, but I'm wondering about the other two. Okay. Give me a little bit of time. Sure. On the claims history, I just don't believe I think claims history is material, especially when you're procuring insurance. I don't believe he lied about the claims history. He said there were claims. There were claims. You don't really have a material with respect to that. You're not pushing it? I'm not pushing that very hard. With regard to the third one is a little bit tricky to handle. I'm out of time, so I'll discuss that in rebuttal. Go ahead. Okay. Certainly. Yes. Certainly. I think on the third point, which we characterize as normally the condition of insured property is material, right? If nothing else, then the amount of the claim is going to be different. Insurance companies want to know whether the thing they're insuring is worth $1 million or $100,000 because it's rotting. Correct. I think with regard to the condition of the property, what is being pushed here is that the damage that Mr. Lietz claiming in this claim already existed prior to this reported claim. And I just don't think that the evidence supports that that. That was the point. I'm asking about materiality now. I'm asking about materiality. If you insure something that's already damaged, the insurance company normally wants to know that in order to determine how much to charge the premiums. I think in procuring insurance, that is a material claim. Well, but it could also be material if you want to see whether what they told you, whether you didn't tell them what the condition was of the Yes. If you lie about Later say I told you the truth before and you didn't, then that's a lie the second time around. Yeah. If you lie about the condition of the property, that is in this particular claim is material to this claims investigation. I agree with that. So we're clear there's, as Judge Thapar had indicated, that intent is the primary argument on the first one. But on the last two, the argument is materiality, right? We're in agreement. Materiality is not the focus of the third prong of this. I believe he told the truth about the condition of the property. Okay. Vandalism was not there prior to him reporting the claim. Thank you. May it please the court, Michael Manahan on behalf of all state. There was a interesting term used in the argument by Mr. Rutter that the evidence has to be overwhelming. And in this case, it is all state's position that the evidence in total is overwhelming. And in order to put in front of the court the condition of this property, which we've discussed, it should be noted that in 2011, there was a message left with the Sydney Health Department that there was mold growing in the property. Mr. Liet claims that he fixed the mold. Yet in 2010, he reports another claim to Nationwide that the property was vandalized and the vandalism is a group of what you would call squiggly lines all across the roof of this structure. Again, unusual. And then he makes a second claim to Nationwide for damage to the outside of the structure. So he claims that as a result of that, he fixes the property himself and pockets the remaining $150,000 plus. We were talking about three distinct issues. Are you on the second one? I'm just going to the third and giving you a background. The third has to do with the condition, not with the nature of the property. And this is the condition. It was never remedied. My point, Judge, would be that... Did he say that it didn't exist at the time that it was insured? Yes. He concealed the condition of the property. Why shouldn't a jury decide that? Because it is overwhelming evidence. It's got to be blatantly contradicted by the record. The first one is easier for me to conceptualize, but Judge Rodgers will be better at conceptualizing the third. So I'll let him do that. The first one, he says, I didn't know she lived there. Why isn't that a question for a jury? He's made a denial. Why isn't that a question? There is no other affirmative evidence that he has produced. Where is that requirement? I mean, the case law is pretty clear, right? That a denial is enough. Even self-serving denials. I was referring in my brief to Cox v. Kennedy... I'm sorry, Cox v. The Kentucky Department of Transportation, 53 F. 3rd, 146. And Booker v. Brown & Williamson Tobacco Company, 879 F. 2nd, 1304. And that case holds the non-moving party cannot avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations or subjective evidence. Sure, but we've got a case called Harris v. J.B. Robinson where the person says, I don't know, or makes an equivalent statement, and we say, look, if they testified, yeah, they can't in their brief, but if they testified to it, then why isn't it a credibility question for the jury? Because there is so much other overwhelming evidence. There are records, documents, letters, multiple, whether he alleges or he agrees he received, his wife received, and gave them to him that show that she was living there. And the material aspect of that is that she had a commercial lease with Mr. Liet, and when this was reported, initially Allstate said, well, she had a commercial lease. She couldn't have any knowledge of what happened there in the evening hours because she wasn't there. And it later turned out that we, you know, Allstate, through our investigation, found out that, yes, she was living there. Her husband died there, as you pointed out, Judge, and that she told us, yeah, we're living there. And Mr. Liet knew we were living there. And, of course, Mr. Liet's own statement is that Mary Lehman is as good as gold. So she's a credible witness. But, you know, as you say, is that, you know, are there differences, and do they differ? Yes. But the fact is Mary Lehman testified after being asked that this vandalism loss really didn't occur, as Mr. Liet claims. And when I say vandalism, I apologize. This is the ultimate vandalism claim in November of 2017, or 15, I'm sorry. And in that case, there was testimony from Mr. Liet that he heard a knock on the door, and there was a police report. Then when he arrives, he observes this extremely unusual, it's beyond belief, actually, where three-quarters of all of the support beams to this huge structure have been sawed. And no other vandalism occurred. Are you still talking about Mrs. Lehman now? Yes, yes, and I'm going to go back to that. You're also talking about the conditions, though, aren't you? Yes, but it also is the timing here, if you'll bear with me for just 30 seconds. So Mrs. Lehman says that she doesn't hear a chainsaw the morning that this allegedly happened, but she does hear a chainsaw three or four weeks before that, and it kept her up for an hour. And the only person that had access to the property was Mr. Liet. So that's where the materiality of the initial nondisclosure of Mary Lehman comes from. Candidly, I'm having a little trouble grasping that and wondering whether I need to in light of Item 2 and Item 3. If you could address Item 2 and Item 3, that would be nice. I understand that now, with respect to Item 3, it's not so much materiality, but rather whether there's a genuine issue of material fact as to misrepresenting the value, I guess, at the time they signed the contract. Or no, at the time that they did the investigation, I guess. Which one is it? He has had multiple claims and never repaired this roof. So the condition of the roof, there are five different claims since 2010. We've got three issues in this case. Are you on number two or number three? Number three involves the condition. That involves the condition, right? You're saying that the prior litigation made it unquestionable that he knew about material conditions. I'm sorry, he knew about the condition of the property and then misled as to what that condition was in his sworn statement? Yes. Is that right? It's mold. The mold stems from 2010, and it's never been repaired. When did he mislead? In the exam under oath he said there was no mold. We repaired it all. And there's mold everywhere. Why did Allstate care whether there was mold? Because that provides him with a motive as to why he was what we believe to be cutting the posts. I see. I understand the facts. From your opponent's perspective, just to see what you have to answer from your opponent's perspective, he never conveyed misleading information about the condition of the house. What part of his testimony in these sworn statements, quasi-depositions, most clearly destroys that perspective? He testified in his second examination under oath, I believe it's page 676, 677, and 704 of the record, that these issues were isolated, little, and minute, and had all been addressed. Okay. Where in the record is it uncontrovertible that that's wrong? In the testimony from his 2011 fraud claim with a different company, there was an examination under oath in that case, and they documented that there was mold. So you're saying it's incontrovertible that he has changed his position? We have transcripts of it. I'm just trying to get where you're on the firmest ground. I mean, he did not tell us the nature and extent of the problem of the mold. Even though he had previously, under oath, told something else. Yes. Thank you. So it is clear that there's a lot of overwhelming evidence. I don't know if the claim here has been addressed in the record, but there was also a claim for bad faith claim handling, and based upon what I believe— I thought that wasn't raised on the board. Yes, correct. I don't need to address it. All right. Then thank you very much. Any other questions? I know it's a confusing fact pattern, but yes. Thank you. Please, the Court, just briefly on rebuttal, and I'll just focus on the third prong. Mr. Lietz's exact testimony from his EUL, as I put in the brief, is, all four of those buildings on South Walnut Street had several claims in the years preceding the matter arising in 2015. So there was no hiding anything during this process. Mr. Lietz came right out. All state asked him about prior claims. He told them about prior claims. What they want to do or investigate with those prior claims— Is that what he referred to, or is that the language he referred to? Well, I think what he's referring to— He says there's minor spotty things that are wrong. I think the claims were actually larger than minor spotty things, but he told them what those claims involved. I mean, you're talking 2011 and 2012 and 2013, and this is fast-forwarding to 2017. If we looked at his previous testimony and his current testimony, and it's flatly inconsistent, that's different from— It might result in summary judgment, whereas just do you believe him when he says this and someone else says that? That's a credibility thing, whereas Judge Tapar says it's classically a jury matter. Yeah, I don't think that they can be contradictory because what he's telling all state in 2017 and 2018 is there were these previous claims. He's not—and he's telling them generalities about here's what happened. There was a roof issue and there was some vandalism. He's really—there's no hiding the ball. I am 100% on the side of if he had told them there were no claims, it's non-issue, and that would be clearly a material misrepresentation. But he's telling them do with what you want. I don't know what—I don't know how you tie that back to posts being cut because that has nothing to do—the vandalism of these posts— It's just whether the insurance company needed to know that information in deciding whether to grant the claim. Yeah, and they could do with the information with what they wish. Weren't there two different claims? Not just the post but the claim that related to mold and paint that supposedly had been submitted earlier and I assume is the one in which he testified that he had sued United Ohio Insurance when, in fact, he was the one that had been sued in that case. Yeah, so this gets a little fact-intensive, but in 2011, there was a claim for mold. The—United Ohio eventually filed a deck action against him for actually something to do with the roof, and it was never really contested and there was a default entered against him on that front. His argument was really with a contractor. There wasn't coverage for that. It was a faulty workmanship exclusion, but it— But this is Beavers, the guy who— Yeah, this involves Thomas Beavers getting into the act and him not doing his work, and there is some testimony about Mr. Beaver falsifying an insurance document. This happens all in 2011. Fast-forwarding to 2017, though, the cuts in the post were not there. An act of vandalism is reported. He files a claim based on those cuts in the post. And then there's a lot of he said, she said, and I think we can summarize this. There's a lot of different facts going on. But over the course of seven to eight hours of a two-day examination of growth, Mr. Leott told Allstate truthfully everything that they asked about, whether it was Mary Lehman, she's a tenant, she was there. Whether it was prior claims, there were prior claims. Of course there were. He was not hiding from them. And as for the condition of the property, when we're speaking about these posts, he's saying, I never saw the post cut, and I came in and the posts were cut. What about the other condition where the initial claim with this insurance company that supposedly was a replication of a claim that he had already made and been paid for with another company? Everything got lumped into one investigation. And that mold claim was paid in part really before myself or Mr. Manahan got involved, and then it was kind of reinvestigated. But I think the focus of this whole case is these posts. It's a big problem. It's going to be a pretty significant claim. And the question really comes down to, did Mr. Leott try to deceive Allstate about these posts? And he did not. Couldn't they have, and this is the one difficulty I have with what you just stated, you could assume that the posts were cut in the way that your client suggests, right, which is recently and independently of the condition that otherwise existed, right? You keep coming back to the posts, but why isn't it material what the condition is of the property before the posts were cut? So that's apart from who did the cutting of the posts. It's just misleading about the value and the condition of the property, and that seems to me to be material in the sense, apart from the fact that there's a concession that it's material, it seems to go to what they would want to know. It might affect their analysis of everything to see that this – they're more likely to destroy their own property if it's not worth much. So a company wants to know whether this property was valuable or whether it was a piece of junk, and in investigating whether the owner had something to do with or didn't have anything to do with the damage which is being insured. The company is going to want to know that. It's part of their decision as to whether they think that this was cut down in the way that you contend that it was cut down, right? So it's not just the condition of the posts. It's the condition of the property that cutting the posts destroyed. Well, typically when you're procuring insurance, the condition of the property is paramount to the risk. You have to assess a premium on that property. Allstate assessed that. They could have done whatever they wanted to do to investigate the condition of that property before they agreed to insure it some two years before the loss. They also, when we reported the claim, had unfettered access to the property. So they can judge that however they want, but I think for purposes of the claim, what the focus is and should be is, is what he's claiming, did he lie about that condition? Did he know that those posts were cut? It doesn't get laid into the first claim. If, in fact, he makes the first claim with Allstate for damage that had already occurred to the property and been paid to repair by another insurance company, then doesn't that fit within? Why isn't that a material issue? I believe that would be, but it just is not the factual case here because the damages claimed six or seven years ago is not the same damage that was claimed. I'm not talking about the cutting of the posts. I'm talking about the first claim. I thought there was overlap in the first claim made to this insurance company with the claim that he had already been paid to repair by a prior insurance company. That first claim, October of 2017, involves vandalism on the interior of a building. And resulting in damage that allowed the roof to leak and caused mold and some sort of paint issue. But those are things that he also asked for of this insurance company and the first claim, is it not? No, it's not. Those are distinct. Thank you. Thank you both for your arguments. We appreciate it. Your case will be taken under advisement. We have a number of other cases on our list today, but they are not argued, so you may dismiss court.